1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT COLEMAN,                          No.  2:13-cv-1021 JAM KJN P

12                  Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16                  Defendants.

17

18   I.  Introduction

19        Plaintiff is a state prisoner, proceeding without counsel.  This civil rights action, filed

20   pursuant to 42 U.S.C. § 1983, proceeds on plaintiff's second amended complaint against

21   defendants Haring, Clough, DeRoco, and Virga.  (ECF No. 25.)  Defendants' motion for

22   summary judgment on the issue of exhaustion of administrative remedies is before the court.  As

23   set forth more fully below, the undersigned finds that defendants' motion for summary judgment

24   should be granted in part, and denied in part.

25   II.  Background

26        In his second amended complaint, plaintiff claims that he was discriminated against, in

27   violation of § 504 of the Rehabilitation Act ("RA"), based on his mental or physical disability,

28   when defendant Haring denied plaintiff bunk-bed cell housing, and insisted on housing plaintiff

                                              1

1   in side-by-side bed cells, despite a doctor's note confirming plaintiff's mental health would be

2   negatively impacted by such housing.  Plaintiff suffers from the mental impairment of paranoid

3   schizophrenia, and is incarcerated in state prison.

4        Also, plaintiff alleges that defendant Haring was deliberately indifferent to plaintiff's

5   conditions of confinement, in violation of the Eighth Amendment, by defendant Haring's

6   continued efforts to place plaintiff in the side-by-side bed cell, as well as by placing plaintiff in a

7   small cage and forcing plaintiff to stand on an injured knee for over seven hours, further injuring

8   plaintiff's knee.  Plaintiff also claims that defendant Haring's actions resulted in plaintiff's

9   subsequent mental breakdown.

10        In his second claim for relief, plaintiff  claims defendants Virga, DeRoco and Clough

11   violated his right not to be discriminated against by regarding plaintiff as being affiliated or

12   associated with a "disruptive group" which took part in the racial riots on December 7, 2011, and

13   April 16, 2012, even though plaintiff did not participate therein.  (ECF No. 25 at 21.)  He

14   challenges the extended modified program on equal protection grounds, premised on the

15   allegation that when defendants returned to regular programming White, Native American,

16   Northern Hispanic, and other inmates not involved in the prison violence, defendants did not

17   return to normal programming African American inmates who, like plaintiff, had not been

18   involved in the prison violence.  Specifically, plaintiff alleges that defendants Virga, DeRoco, and

19   Clough implemented the policy, custom or practice of racially classifying all African American

20   inmates as disruptive groups, which resulted in the lengthy modified programs.  (ECF No. 25 at

21   14.)  In addition to being denied the benefits of normal programming, plaintiff alleges he was

22   deprived of an opportunity to speak with his mother by phone prior to her death on June 8, 2012,

23   or to family members subsequent to her death, during the modified program.  While plaintiff does

24   not state the total duration of the modified programs, it appears the initial lockdown took place on

25   December 7, 2011, lasting for five days, and then modified programming ran until April 12, 2012,

26   when another violent incident resulted in the continuation of the modified program beyond June

27   8, 2012.  Plaintiff alleges that defendants Virga, DeRoco, and Clough, responsible for the

28   modified programs, violated plaintiff's rights by their alleged discriminatory practice of racially

classifying all African American inmates as disruptive groups, resulting in lengthy modified programs.

In his third claim for relief, plaintiff alleges that defendants Virga, DeRoco and Clough were deliberately indifferent to plaintiff's serious need for outdoor exercise from December 7, 2011, until February 6, 2012.  (ECF No. 25 at 24.)  Plaintiff contends that he was in particular need of outdoor exercise due to his paranoid schizophrenia disorder, as well as the fact that side-by-side bed cell made exercising in his cell impossible.

At screening, the court found that plaintiff stated potentially cognizable claims for relief against defendant Haring (Rehabilitation Act claim in his official capacity and Eighth Amendment claim), and defendants Virga, DeRoco, and Clough (equal protection and Eighth Amendment claims).  (ECF No. 29 at 12.)

III.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing the instant action.

A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

1  procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

2  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

3  review process in accordance with the applicable procedural rules,' [] - rules that are defined not

4  by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

5  (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

6  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

7  exhaustion.'") (quoting Jones, 549 U.S. at 218).

8      In California, prisoners may appeal "any policy, decision, action, condition, or omission

9  by the department or its staff that the inmate or parolee can demonstrate as having a material

10  adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

11  On January 28, 2011, California prison regulations governing inmate grievances were revised.

12  Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of

13  appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal

14  form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

15  Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code

16  Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.

17  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

18  prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have

19  been processed at the third level by the Office of Third Level Appeals for the California

20  Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal

21  at the appropriate level and proceed to the highest level of review available to him.  Butler v.

22  Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.

23  2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff

24  members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15,

25  § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding

26  the issue being appealed at the time," and he or she must "describe the specific issue under appeal

27  and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate now has thirty

28  calendar days to submit his or her appeal from the occurrence of the event or decision being

4

1   appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code

2   Regs. tit. 15, § 3084.8(b).

3        Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock,

4   549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[1]

5   "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

6   should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

7   2014) (en banc) (hereafter "Albino"). A defendant need only show "that there was an available

8   administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747

9   F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the

10   administrative remedies were unavailable. See Albino, 747 F.3d at 1172.

11        A prisoner may be excused from complying with the PLRA's exhaustion requirement if

12   he establishes that the existing administrative remedies were effectively unavailable to him. See

13   Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected

14   on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell,

15   623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

16   2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

17   Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third

18   level where appeal granted at second level and no further relief was available).

19        Where a prison system's grievance procedures do not specify the requisite level of detail

20   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

21   requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin

22   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology

23   or legal theories unless they are in some way needed to provide notice of the harm being grieved.

24   A grievance also need not contain every fact necessary to prove each element of an eventual legal

25   ////

---

26   [1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a]

27   defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031.
     Relevant evidence includes statutes, regulations, and other official directives that explain the

28   scope of the administrative review process. Id. at 1032.

claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

resolution, not to lay groundwork for litigation."  <u>Griffin</u>, 557 F.3d at 1120.

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

<u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120, <u>overruled on other grounds by</u> <u>Albino</u>, 747 F.3d 1162.

B.  <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in

Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

<u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

burden of production may rely on a showing that a party who does have the trial burden cannot

produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

////

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.

1   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

2   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

3   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

4   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

5   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

6           By contemporaneous notice provided on September 5, 2014 (ECF No. 45-1), plaintiff was

7   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

8   Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

9   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

10          C.  Facts[2]

11          1.  At times relevant to the lawsuit, plaintiff was an inmate in the custody of the California

12  Department of Corrections and Rehabilitation ("CDCR"), housed at the California State Prison,

13  Sacramento ("CSP-SAC") in Represa, California.  (ECF No. 25 at 5.)

14          2.  On September 22, 2011, plaintiff alleged he was told he was being transferred from his

15  cell, equipped with bunk beds, to a cell that was configured with side-by-side beds.  (ECF No. 25

16  at 7-8.)

17          3.  On September 28, 2011, plaintiff alleges he explained to defendant Haring that being

18  housed in a cell with side-by-side beds, rather than bunk beds, would be a significant hardship

19  because of his "serious mental disorder of paranoid schizophrenia."  (ECF No. 25 at 8.)

20          4.  Plaintiff then rejected his housing assignment and told defendant Haring to place him

21  in Administrative Segregation ("ad seg") because he could not live under those "dire

22  circumstances."  (ECF No. 25 at 8-9.)

23          5.  Inmates who refuse appropriate housing assignments are subject to the disciplinary

24  process and may be placed in ad seg.  Cal. Code Regs. tit. 15, §§ 3269(g); 3323(f)(6).  (ECF Nos.

25  45-6 at 3, ¶ 12; 45-7 at 10-13 (Ex. E).)

26  _____

27  [2]  For purposes of the instant motion for summary judgment, the court finds the following facts undisputed, unless otherwise indicated.  Documents submitted as exhibits are considered to the extent they are relevant, and despite the fact that they are not authenticated because such

28  documents could be admissible at trial if authenticated.

6. Because plaintiff refused his housing assignment, defendant Haring placed him in a holding cage to await his transfer into ad seg. (ECF No. 25 at 9.)  Upon placement in the small holding cage, plaintiff allegedly informed defendant Haring that his physical disability precluded him from standing for long periods.  (Id.)  Plaintiff further alleged that he remained standing in that holding cell for seven hours, which caused his right knee to swell such that a nurse was called.  (Id. at 10.)  The nurse moved plaintiff to a larger holding cell prior to plaintiff's transfer to ad seg.  (Id.)

7. On September 29, 2011, a Captain Shannon released plaintiff from ad seg back to general population, but when plaintiff realized he was being placed in a side-by-side cell with a "well-known 'openly gay' inmate who could possibly be HIV positive," he refused the transfer, and was again returned to ad seg. (ECF No. 25 at 10-11.)  Plaintiff claims he became suicidal and was placed in a Crisis Unit Bed and did not eat or drink for three days.  (Id. at 11.)  On October 1, 2011, plaintiff was again released from ad seg to General Population and placed in another side-by-side cell located in Facility C, Building 8.  (Id. at 12.)  Plaintiff did not refuse this housing assignment and remained in this side-by side cell.  (Id.)

8. Pursuant to plaintiff's second amended complaint, on October 10, 2011, plaintiff wrote a letter to defendant Virga, Warden at CSP-SAC, attaching the 602 appeal grieving defendant Haring's actions of housing plaintiff in a side-by-side cell, as well as Haring's alleged "arbitrary misconduct." (ECF Nos. 25 at 13; 46-2 at 34-35.)  Specifically, plaintiff informed the warden that defendant Haring had abused his authority by excluding plaintiff from being housed in bunk bed cells; by intentionally placing plaintiff in cage 1 and leaving him there for seven hours, despite being aware that plaintiff's disability precluded him from standing for long periods of time; and by attempting to house plaintiff with an openly gay inmate, as well as several "HIV" inmates. (ECF No. 46-2 at 34-35.)  On November 2, 2011, plaintiff's 602 appeal was rejected by the Appeals Coordinator because it was not submitted on the departmentally approved appeal form.  (Id.; ECF Nos. 45-6 at 2, ¶ 6; 45-7 at 2 (Ex. C).)  The rejection letter informed plaintiff that if he wished to pursue the appeal he was required to detach the handwritten pages (i.e. plaintiff's letter to the Warden) and resubmit the appeal.  (Id.)

9. On December 22, 2011, plaintiff properly re-submitted the 602 appeal. (ECF Nos. 25 at 13; ECF Nos. 45-6 at 2, ¶ 7; 45-7 at 4-8 (Ex. D).)  In this appeal, plaintiff appealed the issue concerning defendant Haring housing plaintiff in a side-by-side cell, and claimed defendant Haring retaliated when, after placing [plaintiff] in cage 1, [Haring] stated "All this going to the hole stuff isn't going to change anything.  Because when you come back, I'll make sure you'll be housed in a side by side cell." (ECF No. 45-7 at 6.)  Plaintiff stated that Haring kept his promise, and also attempted to house plaintiff several times with "openly gay" inmates and inmates who were "HIV" positive.  (Id.)  Plaintiff alleged that defendant Haring's intent was to exasperate plaintiff's mental condition, and claimed he suffered a psychotic breakdown and was placed on suicide watch.  (ECF No. 45-7 at 6.)  However, although plaintiff noted he was placed in cage 1, this appeal did not grieve plaintiff's claim concerning defendant Haring intentionally placing plaintiff in the small holding cell on September 28, 2011, and allegedly retaining him there for seven hours, or any other staff misconduct concerning his placement in the holding cage.  (ECF Nos. 45-6 at 2, ¶ 7; 45-7 at 4-8 (Ex. D).)

10. On January 6, 2012, plaintiff's appeal was assigned to Sergeant ("Sgt.") K. Rose for First Level Review and was given Appeal Log Number SAC-C-12-00016.  On January 26, 2012, plaintiff was interviewed by Sgt. Rose about his 602 appeal grieving defendant Haring's allegedly discriminatory actions of placing plaintiff in a side-by-side cell, as well as the other actions plaintiff contended Haring took in connection with plaintiff's housing.  (ECF Nos. 45-6 at 2, ¶ 7; 45-7 at 4-8 (Ex. D).)  Plaintiff claims that during the interview, he reiterated the actions by Haring described in plaintiff's letter to Warden Virga, but that after Sgt. Rose indicated he was leaving to speak with defendant Haring about the side by side cell housing, Sgt. Rose told plaintiff that Rose was "coming back," or had to "check on them." (ECF No. 46-2 at 3-4.)  Plaintiff claims Sgt. Rose did not return.  Plaintiff also provided a declaration by inmate Daniel Baldwin who was present in the cell when Sgt. Rose spoke with plaintiff.  (CF No. 46-2 at 31.)  Baldwin confirmed that on January 26, 2012, plaintiff raised the issue of "the other allegations against Haring," but that Sgt. Rose told plaintiff "that he was coming back.  But said that he would have to [see] or [check] on them." (ECF No. 46-2 at 31-32.)

10

11. On January 26, 2012, the First Level Response stated that plaintiff's appeal had been partially granted. (ECF Nos. 45-6 at 3, ¶ 8; 45-7 at 10-13 (Ex. E).) Specifically, (1) plaintiff's investigation request was granted when Sgt. Rose interviewed defendant Haring regarding plaintiff's appeal issues and determined that plaintiff's placement in a side-by-side cell fulfilled his medical requirements for housing because plaintiff was housed in a lower tier and assigned to a lower bunk; (2) his request that there be no staff retaliation in response to plaintiff filing an appeal was granted; and (3) his request that his appeal be treated as a staff complaint was denied. (ECF No. 45-7 at 10.) This First Level Response states twice that Sgt. Rose determined that plaintiff's appeal did not meet the requirements of a staff complaint. (ECF No. 45-7 at 10.) In Section C of plaintiff's 602 appeal Log No. SAC-C-12-00016, which is returned to the inmate with the First Level Response letter, there is a notation that the 602 appeal was "reviewed by the Hiring Authority deemed not a staff complaint." (ECF No. 45-7 at 4.)

12. Plaintiff did not submit 602 Appeal Log No. SAC-C-12-00016 for further review at the Second or Third level. When inmates are dissatisfied with the First Level Response, they must request a Second Level review within thirty calendar days of receiving the unsatisfactory First Level Response. Cal. Code Regs. tit. 15, § 3084.8(b)(3). (ECF No. 45-6 at 3, ¶ 9.)

13. Title 15 regulations state that when an accepted appeal alleges staff misconduct, but it is not accepted as a staff complaint, the appeal "shall be processed as a routine appeal pursuant to subsection 3084.5(b)(4)(A)." Cal. Code Regs. tit. 15, § 3084.9(i)(1). Because plaintiff's appeal did not meet the criteria of a staff complaint, it was processed as a routine appeal. Thus, plaintiff was required to elevate this appeal through the Second and Third Levels in order to properly exhaust the appeals process regarding his appeal issue. (ECF No. 45-6 at 3, ¶ 10; see Ex. E.)

14. Plaintiff waited until March 24, 2013, to submit a new 602 appeal (Log No. SAC-C-13-00871), which was more than one year after he was informed that his 602 appeal Log No. SAC-C-12-00016, did not meet the criteria for a staff complaint. (ECF Nos. 45-6 at 3-4, ¶13; 45-7 at 15-16 (Ex. F).)

15. In appeal Log No. SAC-C-13-00871, plaintiff requested confirmation of an investigation by Sgt. K. Rose into defendant Haring's alleged arbitrary actions on October 10,

11

1   2011, or, alternatively, plaintiff requested that his previous 602 appeal (Log No. SAC-C-12-

2   00016) be submitted to the Second Level for further review.  (ECF Nos. 45-6 at 3-4, ¶13; 45-7 at

3   15-16 (Ex. F).)

4          16.  On April 11, 2013, plaintiff's appeal Log No. SAC-C-13-00871 was cancelled and

5   returned to plaintiff because it exceeded time limits for submitting appeals, even though he had

6   the opportunity to submit within the prescribed time constraints.  Cal. Code Regs. tit. 15,

7   § 3084(c)(4).  (ECF Nos. 45-6 at 4, ¶14; 45-7 at 18 (Ex. G).)

8          17.  Inmate appeals may be cancelled when time limits for submitting the appeal are

9   exceeded, even though the inmate had the opportunity to submit the appeal within the prescribed

10  time constraints.  Cal. Code Regs. tit. 15, § 3084.6(c)(4).  While cancelled appeals may not be re-

11  submitted for review, an appeal challenging the reasons for the cancelled appeal may be

12  separately appealed.  Cal. Code Regs. tit. 15, § 3084.6(e).  Plaintiff did not appeal the cancellation

13  of his March 24, 2013 appeal Log No. SAC-C-13-00871.  (ECF No. 45-6 at 4, ¶ 16.)

14         18.  Plaintiff concedes that his 602 appeal Log No. SAC-C-12-00016, grieving defendant

15  Haring's actions concerning the side-by-side cell housing assignment, was never reviewed at the

16  Third, and final, Level of review.  (ECF No. 25 at 26-27.)

17         19.  On December 7, 2011, while plaintiff was housed at CSP-SAC in Facility C, Building

18  8, a riot occurred, and in response, defendant Virga placed the entire institution on a lockdown for

19  five days.  (ECF No. 25 at 15.)

20         20.  Plaintiff alleges that five days later, normal program resumed for all but the African

21  American, Southern Hispanic, and Mexican National inmates.  (ECF No. 25 at 15.)  Plaintiff is an

22  African American inmate, and, although he allegedly did not participate in the riot, he was placed

23  on the modified program because it impacted all African American inmates who resided in

24  Facility C.  (ECF No. 25 at 16.)

25         21.  Plaintiff further alleges that, as part of the December 7, 2011 modified program,

26  defendants Clough and C Facility Captain DeRoco were responsible for making a yard schedule

27  that denied outdoor yard access to plaintiff and the other impacted inmates, until February 6,

28  2012.  (ECF No. 25 at 22, 24.)

22.  Plaintiff's second amended complaint affirmatively states that appeal Log. No. SAC-C-12-02411, is the 602 appeal that proves he exhausted his administrative remedies concerning his claims that on December 7, 2011, defendants Clough, DeRoco, and Virga instituted a race-based modified program that denied plaintiff outdoor exercise until February 6, 2012.  (ECF No. 25 at 26, ¶ 44.)  Plaintiff submitted this 602 appeal, on August 1, 2012, approximately eight months after he was placed on the December 7, 2011 modified program, and yard access was taken away. (ECF Nos. 45-6 at 5, ¶ 19; 45-7 at 20 (Ex. H).)

23.  Plaintiff's 602 appeal Log No. SAC-C-12-02411, reads as follows:

"Policy, custom or practice"

On July 9, 2012, CSP-SAC Fac[ility] C Captain, D. DeRoco issued out a memo alerting inmates, who are being affected by this very "DISCRIMINATIVE MODIFIED PROGRAM," about specific changes.  [Plaintiff] finds Captain DeRoco's decision to ALLOW integrated yard between races of inmates who had previously engaged in two (2) serious disruptions, but decision to DENY us any visitation and phone use, to demonstrate these privileges or rights is being used as PUNISHMENT.  Especially, when such officials are well-aware that because FAC[ILITY] C operates two (2) separate yards, and promotes segregation of certain inmates by excluding [buildings] 1-4 inmates to simultaneously attending yard with its inmates housed in [buildings] 5-8, and the separation of its Southern and Northern Hispanic inmates, (all) inmates should - not - be affected by this modified program.  Which means that, these inmates who were housed in buildings 5-8 at the time such incident occurred, at no time did they EVER pose any threat.  Therefore, to exclude those inmates from the prison's privileges or rights, e.g., visit and phone calls, etc., to be excessive.  Where such custom, policy, practice or procedure should end.

(ECF No. 45-7 at 24-25.)  Plaintiff requested the following relief:  "That this practice of a race based lockdown end.  That no reprisal be made for the exercise of this grievance when the appellant has the right to do so."  (ECF No. 45-7 at 24.)  The appeal, supporting documents, and responses are located at ECF Nos. 45-7 at 22-38; 46-2 at 14-15.

The July 9, 2012 memorandum, appended to plaintiff's appeal stated that:

On Monday, July 9, 2012, all Level I/II inmates housed in C4 Block C Section as well as all Level IV General Population inmates identified as White, Other, AMI and Northern Hispanic housed in blocks 1-8 will remain on normal program.

On April 16, 2012, there was a riot on the C Facility main yard, Work Center and C4 Block involving Black inmates as well as

13

inmates identified as or associated with Southern Hispanic (SH) and Mexican Nationals (MN).  Due to the severity of the incident and ongoing tension between the groups involved, all Level IV Southern Hispanic and Mexican National inmates housed in Blocks 1-4, as well as all Black inmates housed in Blocks 1-8 will remain on Modified Program until further notice. . . .

(ECF No. 45-7 at 30.)  Thus, in 602 appeal Log No. SAC-C-12-02411, plaintiff does not mention or grieve any factual allegations as to defendants Clough or Virga.  (ECF Nos. 45-6 at 5, ¶ 20; 45-7 at 22-38 (Ex. I).)

24.  Defendants contend that plaintiff's 602 appeal Log No. SAC-C-12-02411, does not address the actions of defendants DeRoco, Clough, or Virga concerning the claims in his second amended complaint related to the December 7, 2011 modified program and the lack of outdoor exercise that occurred until February 6, 2012.  Plaintiff claims that the 602 did address such actions by defendants because plaintiff reported that such officials were well-aware that because of the segregated housing, those inmates housed in Building 5-8 were prevented from participating in the melee, and should have been excluded from the lockdown and modified program.  (ECF No. 46 at 5.)  Also, defendants contend that the claims in this 602 appeal only grieved issues concerning a modified program that began on April 16, 2012, not December 7, 2011.

Plaintiff counters that the appeal "did not grieve issues concerning a modified program that began on April 16, 2012, because no such sanctions were implemented on April 16, 2012; rather, it was changes to the December 7, 2011 incident."  (ECF No. 46 at 5.)

25.  Defendants contend that under the applicable regulations governing inmate appeals, plaintiff was required to list each staff member involved and describe their involvement.  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2012); (ECF No. 45-6 at 5, ¶ 18.)  Plaintiff agrees, but adds that the regulation also requires inmates to state all facts concerning the issue being appealed, and contends he was not aware of defendant Virga's involvement in the modified program until plaintiff received such information from Lt. S. Riley in response to the first level review.  (ECF No. 46 at 6.)

////

14

26.  On September 24, 2012, plaintiff's 602 appeal Log No. SAC-C-12-02411, after being initially rejected, was accepted at the First Level of Review.  The October 8, 2012 First Level Response letter, summarized plaintiff's appeal as follows:

> On July 9, 2012, you were issued a memo from Correctional Captain D. DeRoco advising you that you were being placed on a modified program.  You claim this memo is discriminating based on how the program is run in C Facility.  You feel that C Facility promotes segregation, based on, excluding inmates from blocks 1 through 4 from going to yard with inmates in blocks 5 through 8.
>
> You request that the practice of a race based lockdown end and that no reprisal be made for this grievance.

(ECF No. 45-7 at 22.)  After summarizing the appeal inquiry, the reviewer noted that the modified program is determined by the warden, and such programs are "continually examined to determine the need for change to their encompass." (ECF No. 45-7 at 23.)  The reviewer found that "the decisions reached by the SAC Administration concerning the modified program were based on the California Penal Code, Department Policies, and the CCR [California Code of Regulations"], which are not based on race as [plaintiff] allege[s].  Therefore [plaintiff's] request for the administration of this Department to be prohibited from initiating any future 'race based lockdown' is denied." (ECF No. 45-7 at 23.)

Defendants contend that the 602 appeal Log No. SAC-C-12-02411 only deals with the July 19, 2012 memo from defendant DeRoco, regarding a modified program that began on April 16, 2012, and argue that it does not address the claims alleged in plaintiff's second amended complaint regarding the December 7, 2011 modified program, or the lack of outdoor exercise until February 6, 2012, and it does not discuss defendants Clough or Virga.  Plaintiff disputes that the 602 appeal Log No. SAC-C-12-02411, only addressed the July 9, 2012 memo from defendant DeRoco regarding a modified program that began on April 16, 2012.  Rather, plaintiff argues that because no such modified program was ever implemented on April 16, 2012, his appeal also addressed the segregated yard that prevented plaintiff from participating in the December 7, 2011 melee.  (ECF No. 46 at 6, citing Pl.'s decl., Ex. C.)

On October 8, 2012, plaintiff's appeal was denied at the First Level.  (ECF Nos. 45-6 at 5, ¶ 20; 45-7 at 22-32 (Ex. I).)

15

27.  On October 29, 2012, plaintiff submitted appeal Log No. SAC-C-12-02411, to the Second Level because he was dissatisfied with the First Level response, stating that "CSP-SAC Facility 'C' does, in fact, practice discrimination by its race-based lockdowns."  In his request for Second Level review, plaintiff did not mention the December 7, 2011 modified program, the coinciding yard schedule made by defendants Clough or DeRoco, and it does not mention defendant Virga. (ECF Nos. 45-6 at 5-6, ¶ 21; 45-7 at 34-38 (Ex. J).)

28.  On November 30, 2012, plaintiff's appeal was partially granted at the Second Level of review by defendant Virga.  (ECF No. 46-2 at 22.)  Correctional Counselor T. Woods conducted the inquiry, including interviewing plaintiff.  Plaintiff's appeal was summarized as follows:

> You contend the rights of inmates at SAC are being violated by being placed on a modified program.  You believe inmates who were non-participants in the Facility incident which prompted the modified program should have been able to continue with their normal program.
>
> You are requesting to be removed from the race-based modified program, restoration of your privileges, and be allowed to return to normal program without any reprisal by staff.

(ECF No. 46-2 at 22.)  In the summary of inquiry, after identifying the relevant Title 15 and CDCR Department Operations Manual ("DOM") sections, the reviewer noted the following:

- Plaintiff requested to be exempted from future race-based modified programs.
- Plaintiff contended the current modified program is being used as a punishment and is a form of discrimination, and that plaintiff and other uninvolved inmates should be returned to normal programming.
- As of August 15, 2012, C Facility had returned to normal programming.
- Institutional modified programs are implemented on a case by case basis and are a matter of safety and security.
- Changes to the Facility program are addressed by the Facility Captain.

(ECF No. 46-2 at 22-23.)  The reviewer found that the implemented modified program restrictions were within the guidelines and mandates of the DOM and Title 15, and were under constant review by the institutional administration.  (ECF No. 46-2 at 23.)

16

Defendants contend that the Second Level response only deals with the July 19, 2012 memo from defendant DeRoco regarding a modified program that began on April 16, 2012. The response does not address the December 7, 2011 modified program, the lack of outdoor exercise until February 6, 2012, and it does not mention or grieve any issues against defendants Clough or Virga. (ECF Nos. 45-6 at 5-6, ¶ 21; 45-7 at 34-38 (Ex. J).)

Plaintiff again disputes that any modified program was implemented on April 16, 2012. (ECF No. 46 at 7.)

29. Defendants contend that if plaintiff's appeal had mentioned defendant Virga, or inferred his involvement, Title 15 regulations would have prohibited defendant Virga from being the Second Level Reviewer.[3]  Cal. Code Regs. tit. 15, §3084.7(d)(1)(A).  (ECF Nos. 45-6 at 5-6, ¶ 21; 45-7 at 34-38 (Ex. J).)

30. On December 30, 2012, plaintiff submitted for Third Level Review appeal Log No. SAC-C-12-02411, assigned TLR Case No. 1207783, because he was dissatisfied with the Second Level response, stating that "because of the above stated reasons CSP-SAC does and continues to practice 'discrimination' against African-American inmates."  (ECF No. 45-5 at 19.)  On January 2, 2013, plaintiff's 602 appeal, TLR Case No. 1207783, was accepted for Third, or Director's, Level of review.  (ECF Nos. 45-4 at 3, ¶ 9; 45-5 at 4-21 (Ex. B).)

31. On March 18, 2013, plaintiff's appeal was denied at the Third Level because it was determined that the July 9, 2012 memo was in compliance with California Code of Regulations, Title 15.  The third level reviewer summarized plaintiff's argument as follows:

> The appellant contends he is being subjected to an inappropriate modified program.  The appellant contends on July 9, 2012, the Captain issued a memorandum regarding the "discriminative modified program"; the decision to allow "integrated yard" between inmates of different races has resulted in previous disruptions; the restrictions being imposed is a form of punishment; the facility "promotes segregation of certain inmates" by using separate exercise yards for the buildings; the inmates involved in the incident were housed in buildings "5-8"; he should not be affected

---

[3]  Plaintiff contends that Virga was not the second level reviewer, but delegated the review to CCI T. Woods to conduct the inquiries.  (ECF No. 46 at 7.)  However, the second level review response makes clear that Virga rendered the appeal decision, and Virga noted that he considered "all submitted documentation and supporting arguments."  (ECF No. 45-7 at 34.)

17

> by the modified program; and the restrictions are "excessive."  The
> appellate requests for the "race based lockdown" to end, and that he
> not be subjected to retaliation for filing an appeal.

(ECF No. 46-2 at 14.)  In the findings, the reviewer explained the considerations involved in modifying programs after violent incidents involving groups of inmates had occurred, and emphasized that the purpose of a modified program is to preserve the security of the institution, and the safety of all persons.  (ECF No. 46-2 at 15.)

Defendants argue that the Third Level response only deals with the July 19, 2012 memo from defendant DeRoco regarding a modified program that began on April 16, 2012.  Defendants contend that the response does not address the claims in plaintiff's second amended complaint regarding the alleged actions of defendants Clough, DeRoco, and Virga concerning the December 7, 2011 modified program, and the lack of outdoor exercise that occurred until February 6, 2012. (ECF Nos. 45-4 at 3, ¶ 9; 45-5 at 4-21 (Ex. B).)  Plaintiff again contends that no modified program was implemented on April 16, 2012, but that it was merely a change from the December 7, 2011 modified program.  (ECF No. 46 at 8.)

32.  The regulations applicable to plaintiff's 602 appeal Log No. SAC-C-12-00016, concerning defendant Haring's actions were amended on January 28, 2011, and adopted on July 28, 2011.  (ECF No. 45-6 at 3, ¶ 11.)

33.  The regulations applicable to plaintiff's 602 appeal Log No. SAC-C-12-02411 (TLR Case No. 1207783), concerning the July 19, 2012 memo from defendant DeRoco, were adopted on January 1, 2012, but remained the same as the Title 15, Article 8, Appeals regulations that were adopted on July 28, 2011.  (ECF No. 45-6 at 6, ¶ 22.)

34.  Under these regulations an inmate must use the required form, and must submit the appeal within thirty calendar days of the event, an unsatisfactory response, or first knowledge of the event being appealed.  Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.8(b)(1)-(3) (July 28, 2011) (Jan. 1, 2012).  The inmate submits his appeal to three formal levels.  Id. at § 3084.7(a)-(c).  A decision at the Third Level (Director's level) is required to fully exhaust.  Id. at § 3084.1(b) (ECF No. 45-6 at 3, 4, ¶¶ 9, 11, & 15.)

////

18

1    D. <u>Discussion</u>

2        The question for the court is whether plaintiff exhausted his administrative remedies

3    regarding his claims against the defendants which are set forth in his second amended complaint,

4    and if he did not, whether plaintiff's failure to meet the pre-filing exhaustion requirement may be

5    excused.  <u>See</u> <u>Sapp</u>, 623 F.3d at 823-24.[4]

6            i. <u>Defendant Haring</u>

7        Defendants provided undisputed evidence that plaintiff did not exhaust his administrative

8    remedies in appeal Log No. SAC-C-12-00016, through the third level of review, and plaintiff

9    concedes that he did not exhaust his claims as to defendant Haring through the third level of

10   review (ECF No. 25 at 26-27).

11       Consequently, the burden shifts to plaintiff to come forward with evidence "showing that

12   there is something in his particular case that made the existing and generally available

13   administrative remedies effectively unavailable to him."  <u>Albino</u>, 747 F.3d at 1172.  The Ninth

14   Circuit has recognized that administrative remedies may be rendered effectively unavailable if

15   prison officials improperly screen out an inmate appeal.  <u>Sapp</u>, 623 F.3d at 822-23.  To satisfy

16   this exception to the exhaustion requirement, a plaintiff must show "(1) that he actually filed a

17   grievance or grievances that, if pursued through all levels of administrative appeals, would have

18   sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials

19   screened his grievance or grievances for reasons inconsistent with or unsupported by applicable

20   regulations."  <u>Id.</u> at 823-24.  <u>See also</u> <u>Nunez</u>, 591 F.3d at 1224-26 (warden's mistake rendered

21   prisoner's administrative remedies "effectively unavailable"); <u>Brown</u>, 422 F.3d at 940 (plaintiff

22   not required to proceed to third level where appeal granted at second level and no further relief

23   was available).

24   _____

25   [4]  Plaintiff makes much of defendants' alleged failure to provide copies of all of plaintiff's
     administrative appeals and responses thereto.  However, defendants are not required to do so.  As
26   set forth above, defendants' burden is very low.  Defendants are only required to show "that there
     was an available administrative remedy, and that the prisoner did not exhaust that available
27   remedy."  <u>Albino</u>, 747 F.3d at 1172.  Once defendants meet their burden, the burden shifts to
     plaintiff to demonstrate that the administrative remedies were unavailable.  <u>See</u> <u>Albino</u>, 747 F.3d
28   at 1172.

Applying Sapp, plaintiff has failed to demonstrate that appeal Log No. SAC-C-12-00016 included his claim against defendant Haring concerning plaintiff's placement in the holding cage, and the alleged injuries he sustained therefrom.  Thus, the appeal, even if fully exhausted, would not have exhausted plaintiff's Eighth Amendment claims concerning his placement in, or his injuries sustained while he was held in, the holding cage.  Accordingly, defendants are entitled to summary judgment on such claims.   Id. at 823-24.

In addition, appeal Log No. SAC-C-12-00016 was not improperly screened out.  Rather, plaintiff received a timely first level response.  Plaintiff could have filed a request for second level review, but did not, and the record reflects that plaintiff intentionally did not file a request for second level review within thirty days from the first level response.

Moreover, if the first level response did not address plaintiff's concerns, was confusing, or if plaintiff was dissatisfied with the response, he was required to file a request for second level review.  Cal. Code Regs. tit. 15, § 3084.7(b) ("The second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level.")

Thus, under Sapp, plaintiff should not be excused from the exhaustion requirement, and his claims against defendant Haring should be dismissed based on plaintiff's failure to exhaust his administrative remedies.

In his second amended complaint, plaintiff argues that he should be excused from the exhaustion requirement "because he was awaiting the completion of Rose['s] alleged investigation," relying on out of circuit authority, Lane v. Doan, 287 F.Supp.2d 210, 212 (W.D. N.Y. 2003).  (ECF No. 25 at 27:2-4.)  Defendants contend Lane is inapposite because in Lane, the prisoner made multiple attempts to file grievances, but because the grievances were not being processed or responded to, he was excused from the exhaustion requirement.  Id. at 211-12.  Here, plaintiff made no such efforts, and in his opposition, states that he relied upon the Departmental Operational Manual,[5] and waited a year before pursuing clarification of the first level response by

////

---

[5]  Plaintiff claims he relied upon §§ 31140.08 through 31140.15 of the CDCR DOM (ECF No. 25 at 27), but such sections concern Internal Affairs Investigations.  Id.

1  filing another administrative appeal.  (ECF No. 46-1 at 9-10.)  Plaintiff does not allege that prison

2  staff thwarted his efforts to exhaust administrative remedies.

3       In his opposition, plaintiff renews his argument, contending that based on <u>Brown</u>, 422

4  F.3d at 936-37, 938, the information provided to prisoners is pertinent and will inform the court

5  of whether such relief was "available."  (ECF No. 46 at 4.)  Plaintiff argues that the first level

6  appeal response was "vague" and led plaintiff to believe that an investigation was ongoing

7  because his allegations concerning discrimination, abuse of authority, and retaliation by Haring

8  were not specifically addressed.[6]  (ECF Nos. 46 at 4; 46-1 at 3.)   However, in the January 26,

9  2012 first level appeal response to appeal Log No. SAC-C-12-00016, plaintiff was informed that

10  "a thorough inquiry was conducted," and was informed, in two different places, that the appeal

11  did not meet the criteria for a staff complaint, and such request was denied.  (ECF No. 45-7 at

12  10.)  Also, Section C of the 602 appeal states that the Hiring Authority found that plaintiff's 602

13  appeal did not meet the criteria for a staff complaint.  (ECF No. 45-7 at 4.)  Thus, plaintiff could

14  not have been under the misapprehension that Sgt. Rose was investigating plaintiff's unaddressed

15  allegations as a staff complaint.  Plaintiff fails to explain why he would rely on Department

16  regulations governing internal affairs investigations, and the first level appeal response does not

17  mention Internal Affairs or reflect such an investigation.

18  ////

19

---

20  [6]  Plaintiff's claim that the January 26, 2012 appeal response was confusing or could be
    misconstrued is based on the summary of inquiry section, where Sgt. Rose states that plaintiff's

21  "request to have [his] allegations investigated *is* granted," and his request to have no retaliation
    against him "*is* granted."  (ECF No. 45-7 at 10, emphasis added.)  Because these statements are

22  made in the present tense, such statements, standing alone, suggest that further investigation was
    to be conducted.  Such reading is also supported by plaintiff's own declaration, and that of inmate

23  Baldwin, in which they both claim that on January 26, 2012, the very same day Sgt. Rose issued
    the first level response, Sgt. Rose told plaintiff that Sgt. Rose would return to discuss plaintiff's

24  "other claims."  (ECF No. 46-2 at 31-32.)  However, a fair reading of the entire appeal response,
    retaining such statements in the context of their subheading, "Summary of Inquiry," and noting

25  that in the "Appeal Response" portion, Sgt. Rose stated that a "thorough inquiry was conducted
    and evaluated," and no staff complaint would issue, does not suggest that a further investigation

26  would occur.  Notably, the sentence granting the request to have the allegations investigated was

27  <u>not</u> included in the "Appeal Response" portion of the first level appeal response.  (ECF No. 45-7
    at 10.)  In any event, even if he was confused, plaintiff failed to timely seek clarification.

28

1    Moreover, plaintiff's reliance on <u>Brown</u> is unavailing, even though his appeal was

2    partially granted, because plaintiff does not argue that he was not required to further pursue

3    remedies because he had received all the available remedies he sought.  <u>Id.</u>, 422 F.3d at 935.  But

4    even had he made such an argument, that position is rebutted by plaintiff's subsequent filing of

5    appeal Log No. SAC-C-13-00871 on March 24, 2013, in which he sought clarification or, in the

6    alternative, to be allowed to pursue appeal Log No. SAC-C-12-00016 to the second level of

7    review.  In addition, in <u>Brown</u>, the appeal was partially granted in that the prison ordered an

8    investigation into Officer Valoff's alleged misconduct through the separate "staff complaint"

9    process.  <u>Id.</u>, 422 F.3d at 937.  Here, the first level appeal response clearly found that plaintiff's

10   appeal was "deemed not to meet the criteria for a staff complaint issue," and advised plaintiff that

11   the "appeal does not meet the requirements for a staff appeal so it is denied."  (ECF No. 45-7 at

12   10.)  Thus, on the instant record, <u>Brown</u> offers plaintiff no relief.

13          While the Ninth Circuit has recognized that the PLRA may not require exhaustion when

14   circumstances beyond a prisoner's control render administrative remedies "effectively

15   unavailable," <u>Nunez</u>, 591 F.3d at 1226; <u>Sapp</u>, 623 F.3d at 822-23, such unavailability is generally

16   premised on the failure of prison officials to accord meaningful access to the administrative

17   grievance process, or to provide meaningful review of a prisoner's grievance.  Plaintiff has stated

18   no facts to demonstrate that prison officials prevented him from fully and timely exhausting his

19   administrative grievances, and no such facts may be reasonably inferred from the record.

20   Plaintiff clearly states that he waited one year before further pursuing his claims against

21   defendant Haring through the administrative appeal process.  There is no basis for attributing to

22   prison officials plaintiff's failure to exhaust appeal Log No. SAC-C-12-00016.  Thus, defendants'

23   motion for summary judgment as to defendant Haring should be granted.

24                  ii.  <u>Defendants Virga, DeRoco and Clough</u>

25          As argued by defendants, plaintiff asserts that appeal Log No. SAC-C-12-02411 is the 602

26   appeal that demonstrates he exhausted his administrative remedies concerning the modified

27   program.  (ECF No. 25 at 26, ¶ 44.)  Defendants contend that plaintiff's appeal failed to put

28   prison officials on notice of plaintiff's claims alleged in the second amended complaint.

1    The undersigned finds that defendants read plaintiff's 602 appeal Log No. SAC-C-12-

2    02411 too narrowly, and plaintiff attempts to construe the appeal too broadly.  In the appeal, there

3    is no mention of the December 7, 2011 lockdown or modified program, and reading the appeal in

4    the light most favorable to plaintiff, there are no factual allegations suggesting he was

5    complaining of a long term deprivation of access to outdoor exercise, or challenging the yard

6    schedule created by defendants DeRoco and Clough.  Indeed, plaintiff states in his appeal that

7    DeRoco was allowing yard time, not depriving plaintiff of yard time.  Thus, defendants are

8    entitled to summary judgment on plaintiff's outdoor exercise claim and challenges based on the

9    yard schedule.

10    By contrast, however, viewing the appeal in the light most favorable to plaintiff, he claims

11    that he was unfairly targeted for restrictions because he was not involved in the riot, that the

12    modified program "promotes segregation," and that inmates housed in buildings 5-8 at the time of

13    the incident could not have posed a threat, thus the restrictions imposed by the modified program

14    were discriminatory, excessive, and constituted punishment.  In addition, the undersigned finds

15    that plaintiff's request that "this practice of a race-based lockdown end" is sufficient to put prison

16    officials on notice of plaintiff's equal protection claim.  Plaintiff's appeal clearly challenges the

17    policy, custom or practice of a race based lockdown.  The first level appeal response noted

18    plaintiff's request that the practice of race based lockdown end, and found that the modified

19    program was not based on race.  (ECF No. 45-7 at 22-23.)  In his request for second level review,

20    plaintiff stated that CSP Facility C "practice[s] discrimination by its race-based lockdowns."

21    (ECF No. 45-7 at 26.).  Defendant Virga articulated plaintiff's appeal a little differently, but

22    stated that plaintiff was requesting to be removed from the race-based modified program, and to

23    be exempt from future race-based modified programs.  (ECF No. 46-2 at 22-23.)  But in his

24    request for third level review, plaintiff again noted his dissatisfaction "because of the above stated

25    reasons CSP-SAC does and continues to practice 'discrimination' against African American

26    inmates."  (ECF No. 45-5 at 19.)  The third level reviewer articulated plaintiff's claims more

27    closely to the words used in the initial appeal, but then claimed plaintiff requested that "the 'race

28    based lockdown' to end."  (ECF No. 46-2 at 14.)  Despite plaintiff's continued claims of

23

1   discrimination by race-based lockdowns, the third level reviewer failed to address race or

2   discrimination, focusing instead on the regulations and the security reasons modified programs

3   are implemented.  (ECF No. 46-2 at 14-15.)

4        Thus, the court finds that plaintiff has exhausted his challenge to the modified program or

5   changes to the modified program implemented on April 16, 2012, or on July 9, 2012, including

6   his claim that the "practice of a race based lockdown end," (ECF No. 45-7 at 24), as well as his

7   alleged deprivation of visits and phone calls (ECF No. 25 at 19-20).

8        However, whether plaintiff's administrative challenge to the policy, custom or practice of

9   race based lockdowns includes a challenge to the December 7, 2011 lockdown remains a disputed

10   issue of material fact.  Plaintiff contends that the modified program began after the December 7,

11   2011 riot, and that subsequent modified programs were simply changes to the initial modified

12   program implemented on December 7, 2011.  The July 9, 2012 memorandum marked "Revised

13   7/9/12," contains the subject line, "C Facility Yard Procedure for Inmates *on Modified Program*."

14   (ECF No. 45-7 at 27, emphasis added.)  The other July 9, 2012 memorandum, addressing C-

15   Facility Operations effective that date, notes that there was a riot on April 16, 2012, but states that

16   due to the severity of the incident and *ongoing tension* between the groups involved," certain

17   inmates "*will remain on* Modified Program."  (ECF No. 45-7 at 30, emphasis added.)  Neither

18   document clearly states that the ongoing modified program was the one implemented as a result

19   of the April 16, 2012 riot, as defendants argue, and no declaration clarifying the issue was

20   submitted.

21        In any event, plaintiff's challenge to the policy or practice of race based lock downs in

22   602 appeal Log No. SAC-C-12-02411, is sufficient to support plaintiff's equal protection claims

23   raised in the second amended complaint.  (ECF No. 25 at 11, 13, 15-16, 18-19 [see ¶¶ 20, 23, 27,

24   28, 32, 33, 35 & 36 (except for statement concerning outdoor exercise)].)  Thus, the undersigned

25   finds that defendants are not entitled to summary judgment as to plaintiff's equal protection

26   claim.[7]

27   _____

28   [7]  Plaintiff also claims that a screened out appeal, Log No. SAC-C-01326, which he alleges also
     challenged the December 7, 2011 modified program, taken together with the appeal Log No.

1    The court turns now to defendants' claim that plaintiff's 602 appeal Log No. SAC-C-12-

2    02411 failed to name defendants Clough or Virga, as required by prison regulations.  In his

3    declaration, plaintiff avers that the reason he did not specifically name Warden Virga in the

4    appeal was because plaintiff was unaware of Virga's involvement in the modified program.  (ECF

5    No. 46-2 at 5.)  Plaintiff declares that it was not "until Lt. S. Riley, who conducted inquiries into

6    [the] appeal at the First Level, alerted him of Virga's involvement."  (ECF No. 46-2 at 5.)

7    Plaintiff makes no such claim as to defendant Clough.  Defendants contend that nothing in the

8    appeal, including appeal responses, "mention or infer defendant Virga's involvement in the

9    modified program that began in December 2011."  (ECF No. 53 at 6.)

10    Previously, the California Code of Regulations required only that an inmate "describe the

11    problem and action requested."  Cal. Code Regs. tit. 15, § 3084.2(a) (2007).  Thus, prior to 2011,

12    prisoners were not required in an administrative grievance to "identify responsible parties or

13    otherwise to signal who ultimately may be sued."  Sapp, 623 F.3d at 824; Wilkerson v. Wheeler,

14    772 F.3d 834, 839 (9th Cir. 2014) ("As in a notice-pleading system, the grievant need not lay out

15    the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object

16    intelligibly to some asserted shortcoming."), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.

17    2002).  Although the United States Supreme Court has stated that providing notice of the

18    individuals who might later be sued is not one of the leading purposes of the exhaustion

19    requirement, Jones, 549 U.S. at 219, California nonetheless amended its regulations to now

20    require prisoners to identify responsible staff in their complaints.

21    District courts appear to take different views of the new regulations.  Compare Blacher v.

22    Johnson, 2014 WL 790910, at *4 (E.D. Cal. Feb. 26, 2014) (dismissing action for failure to

23    exhaust because defendant was not named in the appeal), with Treglia v. Kernan, 2013 WL

24    4427253, at *4 (N.D. Cal. Aug.15, 2013) (concluding plaintiff was not required to name all

25    defendants in an appeal subject to the current regulations).  In light of this conflicting case law,

26

27    SAC-C-02411, would have been sufficient to exhaust all his claims against defendants Virga,
     DeRoco and Clough.  (ECF No. 46-1 at 29.)  However, plaintiff cites no authority for his

28    position, either through case law or prison regulations, and the undersigned is aware of none.

25

1    the absence of controlling authority on point, and the tangential relationship between this

2    requirement and the purposes of exhaustion, arguably there is some question regarding the

3    viability of California's name-all-defendants requirement.

4         But here, plaintiff declares that he was not aware of Virga's involvement until after he had

5    submitted his 602 appeal.  Thus, plaintiff could not name such individual in his initial appeal.

6    Although the 2011 revision now requires that inmates name a specific staff member, if known,

7    the mere fact that the warden was not specifically named in the appeal does not necessarily mean

8    that plaintiff failed to exhaust the administrative grievance process.  In Jones, the Supreme Court

9    concluded that "exhaustion is not per se inadequate simply because an individual later sued was

10   not named in the grievances."  Id., 549 U.S. at 219.  The doctrine of exhaustion protects

11   administrative agency authority by giving the agency an opportunity to correct its own mistakes

12   before being brought into court and it discourages disregard of the agency's procedures.

13   Woodford, 548 U.S. at 89.  Exhaustion also promotes efficiency because claims can generally be

14   more quickly and economically resolved before an agency.  Id.  The primary purpose of a

15   grievance is to alert the institution to a problem and facilitate its resolution, not lay groundwork

16   for litigation.  Griffin, 557 F.3d at 1120.

17        Here, plaintiff avers that he did not know of Virga's involvement when he filed the initial

18   appeal.  Moreover, the record reflects that prison officials were aware of the warden's

19   involvement in modified programs because Lt. Riley, in the first level appeal response, states:

20   "Modified program is determined by the warden."  (ECF No. 45-7 at 23.)  Because plaintiff was

21   challenging the policy or practice of a race-based lockdown or modified program and prison

22   officials were aware of the warden's involvement, they were not deprived of notice or an

23   opportunity to address plaintiff's claims.  Moreover, the appeal, even though it did not name

24   Warden Virga, was accepted at all levels of review, and heard at the third level of review.

25   Therefore, defendant Virga is not entitled to summary judgment based on plaintiff's failure to

26   specifically name Virga in appeal Log No. SAC-C-12-02411.  See, e.g., Boyd v. Etchebehere,

27   2015 WL 1508951, *7 (E.D. Cal. April 1, 2015) ("Defendant has submitted no authority for the

28   proposition that [a prisoner] must specifically name a responsible staff member when challenging

1    a prison policy relating to religious services, particularly when the grievance was considered on

2    the merits at all three levels of review.")

3          However, plaintiff did fail to name defendant Clough in the appeal, and plaintiff fails to

4    demonstrate how his claims against defendant Clough were exhausted by appeal Log No. SAC-C-

5    12-02411, absent Clough's name or factual allegations pointing to defendant Clough.  Plaintiff

6    appears to argue that because he challenged the practice of race-based lockdowns, it can be

7    inferred that his appeal targeted "all personnel who were involved with the implementation of

8    such sanctions."  (ECF No. 46-1 at 30.)  However, plaintiff is mistaken.  As argued by

9    defendants, such a broad view defies the above legal authorities as well as governing prison

10   regulations in Title 15.  Thus, defendant Clough is entitled to summary judgment.

11                    iii.  Construing Documents Other than Form 602 Appeals

12         Plaintiff appears to argue that defendants should have construed his initial letter to the

13   warden as a 602 appeal, or his Form 1824 as a 602 appeal.  (ECF No. 46-1 at 2-3.)  However,

14   prison regulations were revised on July 28, 2011.  (ECF No. 45-6 at 3, ¶ 11.)  The revised

15   regulations governing plaintiff's claims required plaintiff to use the CDCR Form 602:

16              (a)  The appellant shall use a CDCR Form 602 (Rev. 08/09),
               Inmate/Parolee Appeal, to describe the specific issue under
17             appeal and the relief requested. A CDCR Form 602-A (08/09),
               Inmate/Parolee Appeal Form Attachment, which is incorporated
18             by reference, shall be used if additional space is needed to
               describe the issue under appeal or the relief requested.
19

20   Cal. Code Regs. tit. 15, § 3084.2(a).  Therefore, prison officials were not required to construe

21   other forms or letters as 602 appeals; rather, plaintiff was required to grieve his claims by

22   properly filing them on the CDCR Form 602.

23         Also, plaintiff claims that defendants should be estopped from alleging plaintiff's claim

24   under the Rehabilitation Act is unexhausted because plaintiff received an Inmate Orientation

25   Handbook, dated January 2008, which plaintiff claims advises inmates to "grieve alleged

26   discrimination by completing, and submitting, a CDCR Form 1824, "Request for Reasonable

27   Modification or Accommodation."  (ECF No. 46-1 at 16.)  Plaintiff claims that on September 25,

28   2011, he properly submitted the CDCR Form 1824 alleging his improper placement in side-by-

                                                27

1    side beds based on his medical disability, but that appeals coordinators improperly screened out

2    his appeal, stating the issue raised was not subject to the Armstrong Remedial Plan ("ARP"), and

3    advised plaintiff to file a CDCR Form 602 to appeal his non-ARP issues.  (ECF No. 46-1 at 17.)

4    Plaintiff also claims that the DOM, § 54100.32, instructs inmates to grieve their claims of

5    discrimination (based on disabilities) or request for accommodation on a CDCR Form 1824.

6    Plaintiff claims that nowhere in Title 15 does it instruct inmates to grieve their claims of

7    discrimination on a CDCR Form 602.  Plaintiff contends that he used the correct form, but was

8    thwarted by the prison's appeals coordinators to fully exhaust his Rehabilitation Act claim, which

9    rendered his remedies unavailable, again relying on out of district cases.  (ECF No. 46-1 at 17-

10   28.)

11          Plaintiff's argument fails for several reasons.  First, defendants are not moving to dismiss

12   plaintiff's claim because he filed it on the wrong form.  Rather, defendants moved to dismiss the

13   claims against defendant Haring because plaintiff failed to pursue such claims, contained in the

14   602 appeal Log No. SAC-C-12-00016, through the third level of review.

15          Second, plaintiff was advised by the appeals coordinator to file a 602 appeal, and he

16   subsequently filed such an appeal -- Log No. SAC-C-12-00016 -- in which he raised the

17   allegations supporting his claim under the Rehabilitation Act.  Thus, the filing and handling of the

18   Form 1824 is of no consequence here.  The appeals coordinator advised plaintiff to file a 602

19   appeal, which plaintiff did, on December 22, 2011.

20          Third, as set forth above, the revised prison regulation, Cal. Code Regs. tit. 15,

21   § 3084.2(a), required plaintiff to file his claims on the CDCR Form 602.

22          Finally, the United States Supreme Court requires prisoners to "properly exhaust

23   administrative remedies" by following the procedural rules defined "by the prison grievance

24   process."  Jones, 549 U.S. at 218.  As set forth above in great detail, California prisoners are

25   required to pursue administrative remedies through the third level of review.

26          For all of these reasons, plaintiff's reliance on the alleged mishandling of his Form 1824 is

27   unavailing.

28   ////

IV.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 45) be granted in part, and denied in part, as follows:

a.  Plaintiff's claims against defendant Haring should be dismissed without prejudice, based on plaintiff's failure to exhaust administrative remedies;

b.  Plaintiff's claims against defendants Virga, DeRoco, and Clough that plaintiff was denied access to outdoor exercise in violation of the Eighth Amendment should be dismissed without prejudice, based on plaintiff's failure to exhaust administrative remedies;

c.  Plaintiff's claims against defendant Clough should be dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies; and

d.  The motion for summary judgment by defendants Virga and DeRoco as to plaintiff's equal protection claims under the Fourteenth Amendment should be denied.

2.  Defendants Virga and DeRoco be directed to file an answer within twenty-one days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 21, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cole1021.msj.fte

29