UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COLEMAN, | No. 2:13-cv-1021 JAM KJN P |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. This action proceeds on plaintiff's challenge to the modified program or changes to the modified program implemented on April 16, 2012, or on July 9, 2012, including his claim that the "practice of a race based lockdown end," (ECF No. 45-7 at 24), as well as his alleged deprivation of visits and phone calls (ECF No. 25 at 19-20), against defendants Virga and DeRoco.[1] (ECF Nos. 67 at 23-27; 29; 77.) Plaintiff filed a motion for sanctions, to extend discovery, and to obtain an order for preliminary injunctive relief. However, because defendants responded to plaintiff's discovery requests, the undersigned construed plaintiff's motion as a motion to compel discovery and for sanctions, and denied the

---

[1] The undersigned also found that "whether plaintiff's administrative challenge to the policy, custom or practice of race based lockdowns includes a challenge to the December 7, 2011 lockdown remains a disputed issue of material fact." (ECF No. 67 at 24.)

1

motion for injunctive relief without prejudice. (ECF No. 93.) Defendants filed an opposition to the motion, and plaintiff filed a reply.[2] On September 9, 2016, plaintiff filed a motion for *in camera* review of documents responsive to his request for production of documents nos. 5 and 6. On October 3, 2016, defendants filed an opposition.

II. Motion to Compel

    A. Standards

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. Cnty. of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

Plaintiff bears the burden of informing the court (1) which discovery requests are the subject of his motion to compel, (2) which of the responses are disputed, (3) why he believes the response is deficient, (4) why defendants' objections are not justified, and (5) why the information he seeks through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, 2016 WL 3196738 at *1 (E.D. Cal. 2016); Ellis v. Cambra, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified."). The reach of Rule 34 of the Federal Rules of Civil Procedure, which governs requests for production, "extends to all relevant documents, tangible things and entry upon designated land or other property." Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472-73 (D. Nev. 1998), citing 8A C. Wright & A. Miller, Federal Practice and Procedure § 2206, at 381.

---

[2] Plaintiff's reply was signed on August 3, 2016, the day after the court issued its order requiring defendants to address the status of plaintiff's legal materials and his ability to attend the law library.

2

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." U.S. ex rel. O'Connell v. Chapman University, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

B. Discussion

Defendants are correct that plaintiff failed to provide copies of the disputed discovery requests and the responses. Plaintiff responds that he could not provide copies of these items because of difficulties he experienced at the Short Term Restricted Housing ("STRH") law library and with the librarian at California State prison, Sacramento ("CSP-SAC"). (ECF No. 103 at 3.) Plaintiff contends that he had to retain his original and could not mail out the only copy of such material to the court.

However, plaintiff's arguments that the prison law library limits the number of copies, or that he had difficulty obtaining such copies, are unavailing because plaintiff may handwrite copies of the requests and responses, particularly where it appears he is only challenging six specific discovery requests. The court could deny plaintiff's motion on such basis alone. See, e.g., Nelson v. Runnels, 2009 WL 211052, at *8 (E.D. Cal. Jan. 28, 2009) (motions to compel

3

denied without prejudice based on prisoner's failure to provide discovery requests and responses), report and recommendation adopted, 2009 WL 728495 (E.D. Cal. Mar. 19, 2009)

On the other hand, the court is vested with broad discretion to manage discovery, and notwithstanding the discovery procedures set forth above, plaintiff is entitled to leniency as a pro se litigator; therefore, to the extent possible, the court addresses plaintiff's motion to compel on its merits. Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012); Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005); Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

### 1. Interrogatory No. 1 to Defendant Virga

Interrogatory No. 1

> [1.1] Back in 2011, did C-Facility Administration carry-out a 'special committee' that resulted in approximately 50 to 100 African-American inmates being transferred in exchange of Hispanic inmates? [1.2] If so, why? [1.3] And what month did the Hispanic inmates arrive at SAC C-Facility?

Response to Interrogatory No. 1

> Defendant objects to this interrogatory on the grounds it is compound, and is vague as to time and the phrase "carry-out a 'special committee'." The interrogatory also seeks information that is deemed confidential under California Code of Regulations, title 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d). Defendant further objects that this interrogatory seeks information not relevant to Plaintiff's claim that Defendant was responsible for CSP-SAC's practice of placing him on modified programs based on his race or to a defense at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

(ECF No. 99 at 3-4.)

Specifically, plaintiff contends that despite Virga's objection that the information is confidential, plaintiff maintains that it is not confidential, and is relevant to his instant claims. Plaintiff argues that the transfer of African-American inmates for Hispanic inmates created an unsafe environment that led to the December 7, 2011 riot. (ECF No. 91 at 4.)

////

1         Defendants claim the objection was proper because the interrogatory seeks confidential
2   information regarding CSP-SAC's prison operations and the basis for confidential decisions made
3   in managing the inmate population.  Defendants argue that plaintiff fails to show the objection
4   was not justified, and offers nothing to support his view.  Moreover, defendants contend that
5   plaintiff's opinion that by transferring African-Americans for Hispanics created the unsafe
6   environment that led to the December 7, 2011 riot, is a fishing expedition to expand plaintiff's
7   claims to a conditions of confinement claim, beyond plaintiff's claims that defendants placed him
8   on race-based modified programs.  Defendants argue that this interrogatory seeks confidential
9   information that is irrelevant to plaintiff's equal protection claims, and would jeopardize the
10  safety and security of inmates, staff, and the institution.
11        Plaintiff replies that defendant Virga's confidentiality objection is deficient because it fails
12  to explain how or why the alleged "confidential information" would jeopardize such security.
13  Plaintiff maintains that a simple yes or no answer would have been sufficient.  (ECF No. 103 at
14  5.)  Plaintiff states that he would not seek the reason if the answer to the interrogatory is yes, but
15  that defendant should be required to provide either a yes or no response.  (ECF No. 103 at 6.)
16  Plaintiff argues that this should also be extended to the day, month, and year the Southern
17  Hispanics arrived at Facility C of CSP-SAC because such information would not jeopardize
18  security.
19        In this interrogatory, plaintiff seeks to obtain answers in order to prove a theory that
20  prison staff conspired to arrange fights between certain categories of inmates in order to place
21  only African-Americans on lock down.  However, this action proceeds on plaintiff's equal
22  protection claim that in response to riots at CSP-SAC, defendants improperly locked him down,
23  despite plaintiff not being involved in the riot, and subjected him to race-based restrictions that
24  were discriminatory and excessive, and constituted punishment, during the initial lockdown and
25  subsequent modified programming.  Plaintiff's efforts to broaden the scope of his claims through
26  discovery are inappropriate and unavailing.  Such discovery request is not relevant to the instant
27  claims in this action and is not reasonably calculated to lead to the discovery of admissible
28  evidence.  See Fed. R. Civ. P. 26(b)(1).

1  Thus, the court finds that defendant Virga's objections are well-taken, and plaintiff's
2  motion to compel further response to interrogatory no. 1 is denied.

### 2. Interrogatory No. 2 to Defendant Virga

Interrogatory No. 2

> Before the December 7, 2011 melee took place between African-American, Southern Hispanic and Mexican National inmates, when was the last time on C-Facility these said-above inmates had engaged in such violent [sic] acts between one of another?

Response to Interrogatory No. 2

> Defendant objects to this interrogatory on the grounds it is unduly burdensome, is vague as to time, the word "melee," and the phrase "these said-above inmates had engaged in such violent [sic] acts between one of another?" The interrogatory also seeks information that is deemed confidential under California Code of Regulations, title 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d).
>
> Defendant further objects that this interrogatory seeks information not relevant to Plaintiff's claims that on December 7, 2011 and April 16, 2012, Plaintiff was placed on a race-based modified program in violation of his Fourteenth Amendment rights or any defense at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

(ECF No. 99 at 5.)

Plaintiff objects to defendant Virga's response to interrogatory no. 2 on the same grounds as no. 1. Plaintiff also cites to the grievance, reviewed by Virga, in which Virga states that the modified program was "based on the [history] of racial incidents between Black and Hispanic inmates within Facility C." (ECF No. 91 at 5.) Plaintiff contends that no such history of violence between such inmates existed for over a decade. (Id.)

Defendants contend that plaintiff failed to address defendants' objections, including the issues of confidentiality and relevance. Defendants argue that the objections are proper because the request seeks confidential information regarding CSP-SAC's determination regarding which inmates and/or groups of inmates were involved in prison disturbances, and the request was

unduly burdensome and vague as to time, because it does not clearly identify the nature of the violent act (using "melee"), and is not limited in time. (ECF No. 99 at 5.) Similarly, the request does not make clear whether plaintiff sought information about acts of violence between all three groups of inmates or some combination of them, and whether such acts of violence led to a modified program or lockdown. Further, defendants contend that plaintiff's argument that he is entitled to all memorandums related to such violent acts is unavailing because the discovery request was phrased as an interrogatory, not a request for production of documents.

Plaintiff argues that in response to interrogatory number 2, defendant Virga should provide the day, month and year inmates involved in the December 7, 2011 riot had engaged in an earlier riot because such information would not jeopardize any security or be burdensome. (ECF No. 103 at 6.) Plaintiff contends that he does not seek to receive discovery as to every single violent act committed by such inmates, but only the last riot between African-American inmates against any Southern Hispanic or Mexican National inmates that occurred prior to December 7, 2011, at Facility C of CSP-SAC. (ECF No. 103 at 7.) Plaintiff argues that CSP-SAC's officials alleged that the modified program was implemented because of the "violent [history] between inmates involved in the December 7, 2011 and April 16, 2012 riots at Facility C." (ECF No. 103 at 7.) Plaintiff disputes that he seeks "any type of violent acts," just the last riot before December 7, 2011, involving such inmates. (Id.)

First, plaintiff is advised that he cannot alter discovery requests after they are propounded, and he may not seek documents through interrogatories. Second, the court agrees that interrogatory no. 2 is not ideally worded, but given that the modified program at issue here was implemented because of the allegedly violent history between the inmates involved, a narrowly crafted interrogatory would lead to admissible evidence herein. Therefore, plaintiff's motion to compel is partially granted; defendant Virga shall provide a response to the interrogatory as narrowed by plaintiff: "Defendant Virga shall identify the day, month, and year of the last riot between African-American inmates against any Southern Hispanic or Mexican National inmates that occurred before December 7, 2011, at Facility C of CSP-SAC."

////

3. <u>Interrogatory No. 3 to Defendant Virga</u>

<u>Interrogatory No. 3</u>

[3.1] "In regards to the December 7, 2011 melee, was there ever an "threat risk assessment" process conducted by C-Facility's Administration to release [any] none-threatening [sic] inmates from the lockdown/modified program? [3.2] If so, can you explain what measures were made to effectuate such process? [3.3] And how many inmates were released? [3.4] This is African-Americans?"

<u>Response to Interrogatory No. 3</u>

Defendant objects to this interrogatory on the grounds it is compound, vague as to the word "melee," and the phrases "'threat risk assessment' process," "release [any] none-threatening inmates," and "effectuate such process." Defendant further objects on the grounds the interrogatory it is argumentative and is unintelligible as posed. The interrogatory also seeks information that is deemed confidential under California Code of Regulations, title 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d).

Without waiving these objections, Defendant responds:

[3.1] - The December 7, 2011 riot on C-Facility's main recreation yard involved approximately 200 Black and Southern Hispanic/Mexican National inmates. This incident was of such magnitude, all C-Facility Level IV inmates were placed on modified program. Investigations into disturbances of this magnitude, are lengthy and time-consuming and because each disturbance is unique, there is not a set formula regarding returning the facility to regular programming. Individual risk assessments are performed as part of the process of returning inmates to regular programming. The procedures used and the information received from performing those individual risk assessments is confidential, however, because it involves performing inmate interviews and central file reviews of all the inmates impacted by the modified programs.

[3.2] - As the investigation into the reasons for the modified program continues, if possible, there is a gradual and incremental return to normal programming for the inmates impacted by a modified program.

[3.3] – [3.4] - All African-American inmates impacted by the modified program that began as a result of the December 7, 2011 riot were incrementally returned to regular program on April 16, 2012.

(ECF No. 99 at 6.)

Plaintiff contends that his interrogatory no. 3, which defendant Virga refused to answer on confidentiality grounds, asked whether a "threat risk assessment" had been made and, if so, what measures were taken, and how many inmates were actually returned to normal program as a result of such procedure. Plaintiff cites to a 2010 modified program where 113 Black inmates were returned to normal program, despite an attempted murder of an African-American inmate by a Northern Hispanic inmate. Plaintiff maintains such information is not confidential.

Defendants argue that defendant fully responded to the interrogatory, despite the lodged objection. Plaintiff did not address this interrogatory in his reply.

The undersigned finds that defendant responded to the interrogatory by confirming that individual risk assessments were performed, and that African-American inmates "were incrementally returned to regular program on April 16, 2012." (ECF No. 99 at 6.) Thus, plaintiff's motion to compel further response to interrogatory no. 3 is denied.

### 4. Request for Production of Documents

With regard to plaintiff's request for production of documents, plaintiff seeks to compel responses to requests 4, 5 and 6. Defendants counter that plaintiff's motion fails to address each request, except for request no. 6, does not identify how defendants' objections are improper or the responses are inadequate, and that his rambling arguments make it difficult to determine what documents he seeks. Defendants provided plaintiff 85 pages of discovery in response to his requests for production. (ECF No. 99 at 9.)

a. Request for Production No. 4

I request the permission to view the December 7, 2011 and April 16, 2012 video of the C-Facility's melee's.

Response to Request for Production No. 4

Defendants object to this request on the grounds it is compound. Further, this request exceeds the permissible scope of discovery because reviewing video of the riots that occurred on the C-Facility main yard is not relevant to any claim or defense at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). The request also seeks information that is deemed confidential under California Code of Regulations, Title 15, section 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the

> production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d). Defendants therefore do not respond to this request.

(ECF No. 99 at 7-8.)

Defendants contend that the objections are proper; the videos are not relevant to plaintiff's claims that he was placed on race-based modified programs, and these videos are considered confidential under California's prison regulations.

In reply, plaintiff argues that defendant Virga refuses to provide plaintiff with pertinent documents or to allow him to review the December 7, 2011 and April 16, 2011 videotapes of the riots. Plaintiff contends that such videos are relevant and will lead to admissible information, such as how the riot began. For example, plaintiff argues that either video may show that the initial dispute which led to both riots began between the Kumi/Bay Area and Southern Hispanics. (ECF No. 103 at 8.) Such videos may show that the dispute was only between the Kumi/Bay Area, Southern Hispanics and Mexican National inmates, and not involving non-affiliates, Crip and Blood disruptive group members, yet prison officials still decided to place all African-American inmates on lock down. In addition, plaintiff argues that the April 16, 2012 video may also show that once the administration decided to release all inmates housed in building 5, including Crips and Bloods, only Kumi/Bay area Southern Hispanics and Mexican National inmates had participated in the riot on the big side yard, which would prove that prison officials knew who the quarrel was between. (ECF No. 103 at 9.)

The melees or riots are relevant because they prompted the lockdowns or modified programs at issue here and therefore are likely to lead to admissible evidence. Plaintiff's equal protection claims are focused on whether plaintiff was wrongfully placed on race-based modified programs, and viewing the videos may reveal the extent of the involvement of African-American inmates. Defendants fail to explain how plaintiff viewing the December 7, 2011 and April 16, 2011 videotapes would endanger other inmates or staff or jeopardize the security of the institution. Indeed, any inmate on the yard during such riots or melees had the opportunity to personally view prison staff's reactions. Plaintiff's motion to compel is granted as to request no.

10

4. Defendants shall make arrangements for plaintiff to take notes while viewing the videos, and ensure plaintiff has adequate time to review them.

        b. Request for Production No. 5

> I request to obtain all incident reports and memorandums pertaining to the December 7, 2011 and April 16, 2012 melee that occurred on C-Facility.

Response to Request for Production No. 5

> Defendants object to this request on the grounds it is compound, overbroad and vague as to time and the phrases "any and all memorandums" and "engaging in a 'race-riot.'" The request also seeks information that is deemed confidential under California Code of Regulations, Title 15, section 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d).
>
> Defendants further object that such materials are subject to the official information privilege under California Evidence Code sections 1040 et seq. A privilege log and declaration supporting this assertion of privilege is served upon Plaintiff concurrently with this response.
>
> Without waiving objections, Defendant responds as follows:
>
> 1. CDCR 3022B–Program Status Reports, Part B, SAC-C-11-018, and Memoranda related to SAC-C-11-018, Attachment 1.
>
> 2. CDCR 3022B–Program Status Reports, Part B, SAC-C-12-002, and Memoranda related to SAC-C-12-002, Attachment 2.

(ECF No. 99 at 8-9.)

    Plaintiff argues that the incident reports are not confidential because a copy of each incident report is provided to each inmate charged with a rules violation. (ECF No. 91 at 10.)

    Defendants contend that plaintiff's use of the term "incident report" is unclear, but that plaintiff was not involved in either riot. Defendants maintain that they properly asserted that the documents sought are confidential, and provided a privilege log and a declaration in support. Defendants argue that plaintiff failed to provide any argument or legal authority to show why such confidential documents should be disclosed, or how defendants objections are insufficient.

////

11

Plaintiff replies that the December 7, 2011 and April 16, 2012 incident reports might show that the administration knew the animosity was only between Kumi/Bar Area, Southern Hispanic and Mexican National inmates, because the December 7, 2011 incident report may contain the dispute that led to the riot between such inmates.  (ECF No. 103 at 10.)  Plaintiff points to Lt. Clough's acknowledgment of such dispute in response to grievances by inmates Boudreaux, Morris and Jackson.  (ECF No. 103 at 10.)  Although Lt. Clough left out the affiliation of the groups involved in such dispute, plaintiff argues that the Crips and Bloods can be eliminated as part of the December 7, 2011 dispute because they were on lockdown.  Plaintiff seeks this critical information to dispel defendants' claims that all African-American inmates were placed on modified program for safety and security reasons because prison staff could not determine who the Southern Hispanics were actually targeting.  (ECF No. 103 at 10-11.)

In defendants' privilege log, defendants contend that 720 pages of incident reports, memoranda, investigative memoranda & reports, and confidential portions of program status reports, pertaining to the December 7, 2011 and April 16, 2012 melees that occurred on Facility C, contain confidential information that would jeopardize the safety and security of the institution if disclosed, citing Cal. Code Regs. tit. 15, §§ 3321, 3450(d); Cal. Gov't Code § 6254(f), and the official information privilege.  (ECF No. 99-1 at 53.)  Defendants provided the declaration of T. Kraemer, litigation coordinator, who explains why disclosure of such information would jeopardize the security of the staff, inmates, and institution.  (ECF No. 99-1 at 56-58.)  Kraemer avers that it would not be possible to craft a protective order to cover these competing concerns.

In section 1983 cases, federal law, not state law, applies to resolve the question of privileges.  See Kerr v. U.S. Dist. Court for the N. Dist. of Cal., 511 F.2d 192, 197 (9th Cir. 1975), aff'd 426 U.S. 394 (1976); Bryant v. Armstrong, 285 F.R.D. 596, 604 (S.D. Cal. 2012).  Federal common law recognizes a qualified privilege for official information.  See Kerr, 511 F.2d at 197-98.  To determine whether the official information privilege applies, the court must balance the interests of the party seeking discovery and the interests of the government entity asserting the privilege.  Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  However, in the context of civil rights action, "this balancing approach is moderately 'pre-

12

weight[ed] in favor of disclosure.'" Bryant, 285 F.R.D. at 596 (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 661 (N.D. Cal. 1987)).

To trigger the court's balancing of interests, the party opposing disclosure must make a "substantial threshold showing." Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 669). The party opposing disclosure "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." Id.; see also Stevenson v. Blake, 2012 WL 3282892, at *2 (S.D. Cal. Aug. 10, 2012). The declaration must include: "(1) an affirmation that the agency has maintained the confidentiality of the documents at issue; (2) a statement that the official has personally reviewed the documents; (3) a specific identification of the governmental or privacy interests that would be compromised by production; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to these interests; and (5) a projection of how much harm would be done to these interests if disclosure were made." Id., citing Kelly, 114 F.R.D. at 670. If the objecting party does not meet the requirements for invoking the privilege, a court will overrule the privilege objection and order full disclosure. Bryant, 285 F.R.D. at 605 (citing cases).

Here, defendants provided a declaration in support of their privilege objection. However, defendants have broadly incorporated 720 pages of documents into three categories: (1) All Incident reports and memorandums pertaining to the December 7, 2011 and April 16, 2012 melee that occurred on C-Facility;" (2) December 7, 2011 - Modified Program SAC-C-11-018 Incident Reports, Investigative Memoranda & Reports, Confidential Portions of Program Status Reports-- CDCR 3022B, Parts, C, D, & E, Confidential Unlock Plan of Action;" and (3) April 16, 2012 - Modified Program SAC-C-12-002 Incident Reports, Investigative Memoranda & Reports, Confidential Portions of Program Status Reports--CDCR 3022B, Pars C, D, & E, Confidential Unlock Plan of Action." (ECF No. 99-1 at 53.) Kraemer's declaration does not further identify specific documents, except for "the operations manual and investigative reports." (ECF No. 99-1 at 56.) Kraemer appears to claim that disclosure of all 720 pages would generally undermine the institution's ability to keep peace, security, and order, and negatively impact all future internal investigations, and claims that "there is simply no way to craft a protective order to address all

13

[such] concerns." (ECF No. 99-1 at 56-58.) However, in cases involving inmate plaintiffs, courts often order the production of documents with confidential information redacted and accompanied by a privilege log. See, e.g., Manriquez v. Hutchins, 2011 WL 3290165 at *8 (E.D. Cal. Jul. 27, 2011); Womack v. Virga, 2011 WL 6703958 at *6 (E.D. Cal. Dec. 21, 2011); Candler v. Santa Rita Cnty. Jail Watch Commander, 2014 WL 2120310 at *5 (N.D. Cal. May 21, 2014). Moreover, in a case involving similar claims, CDCR defendants were ordered to produce relevant, non-privileged portions of the incident reports, as well as rules violation reports concerning the inmates involved in the incident because they were reasonably calculated to lead to the discovery of admissible evidence. Martinez v. Allison, 2013 WL 1222037 (E.D. Cal. Mar. 25, 2013) (Martinez asserts violations of his Fourteenth Amendment equal protection rights because he was placed on a modified program based solely on his race as a southern Hispanic, and his Eighth Amendment rights were violated by suspending his outdoor exercise privileges during the modified program). Even privileged documents are discoverable "if the potential benefit in discovery outweighs any potential disadvantages." Bryant v. Thomas, 2012 WL 1985310 at *3 (S.D. Cal. June 1, 2012) (citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990).

Weighing the possible benefits of discovery against both the defendants' asserted official information privilege, and the privacy concerns of third party inmates, the court finds that there is a narrow category of documents where discovery is appropriate. Plaintiff's motion is granted as to the non-privileged portions of incident reports concerning the December 7, 2011 and April 16, 2012 melees or riots. Defendants are permitted to redact the names and identification of individuals who are non-parties. Moreover, because it appears that the program status reports may also lead to the discovery of admissible evidence, portions of which have been disclosed to plaintiff, those portions of the program status reports pertaining to the December 7, 2011 and April 16, 2012 melees that defendants deemed confidential shall be submitted to the court for *in camera* review.

In all other respects, plaintiff's motion to compel further response to request no. 5, or for additional *in camera* review, is denied.

14

    c. Request for Production No. 6

    I request to obtain any and all memorandums pertaining to African-American and Southern Hispanic inmates on C-Facility engaging in a "race-riot" prior to the Dec. 7, 2011 melee.

    Response to Request for Production No. 6

    Defendants object to this request on the grounds it is overbroad and vague as to time, the word "melee," and the phrases "any and all memorandums," "pertaining to African-American and Southern Hispanic inmates," and "engaging in a 'race-riot.'" Further, this request far exceeds the permissible scope of discovery because it seeks information not relevant to any claim or defense at issue in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). The request also seeks information that is deemed confidential under California Code of Regulations, Title 15, section 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d).

    Because the request does not identify the documents Plaintiff is seeking with reasonable specificity, and is not relevant to any claims or defenses in this lawsuits, Defendant does not respond to this request.

(ECF No. 99 at 10.)

    The undersigned finds the defendant's objections well-taken. Plaintiff's request is overbroad as to time and vague. Plaintiff failed to meet his burden in demonstrating that such evidence is relevant and likely to lead to admissible evidence. The motion to compel is denied, and plaintiff's motion for *in camera* review of such documents is also denied.

        5. Request for Inmate List with Housing Codes

    Plaintiff argues that he is entitled to obtain the Inmate Housing Code ("IHC") and name of every inmate placed on the integrated yard list on March 27, April 4, June 26, July 11, and July 16, 2012, because the IHC will reveal if any of the inmates had a history of violence or documented racial incidents. Plaintiff contends that if even a majority of such inmates had prior histories of violence or racial incidents, such information would demonstrate that the modified program was discriminatory and not implemented to protect the safety of the inmates or the

////

15

institution, but to cause African-Americans harm. Plaintiff contends that the modified program was implemented in order to harm the African-American population.

However, defendants aver that plaintiff did not seek such discovery in any of his discovery requests propounded during the discovery period. (ECF No. 99 at 11; 99-1 at 2, 5-50.) Plaintiff fails to rebut defendants' argument, and cannot obtain a court order compelling responses to a request not tendered. Plaintiff's motion to compel such information is denied.

### 6. Conclusion

For the above reasons, plaintiff's motion to compel is granted in part, and denied in part.[3]

## II. Request for Sanctions

In his motion, plaintiff argues that sanctions should be imposed based on defendants' refusal to turn over certain material or answer questions. Plaintiff objects that it should not have taken defendants 107 days to provide the limited responses provided. He contends that many of the interrogatories were not answered, and no documents were provided in response to his request for production of documents. (ECF No. 91 at 3.) Essentially, plaintiff seeks sanctions based on defendants' delay in providing the discovery, as well as their failure to provide the additional discovery sought. However, defendants were granted extensions of time in which to provide the discovery responses. Moreover, at the time defendants responded to plaintiff's discovery, there was no court order in place. Defendants violated no court order by claiming confidentiality or by objecting to plaintiff's discovery requests. The court finds no grounds to impose sanctions.

## III. Motion to Extend Discovery

Plaintiff seeks to extend discovery, arguing that it was not until he received defendants' interrogatory responses that he learned about 200 inmates were involved in the December 7, 2011 riot. Plaintiff argues that if 200 inmates were involved, it would bolster his claims that Facility C officials released Hispanic inmates not scheduled for yard so they could assault African American inmates. (ECF No. 91 at 7-8; 103 at 11.) Plaintiff argues that if he is allowed to review the

---

[3] All parties remain under the obligation to supplement their discovery responses if the responding party learns that a response was incomplete or incorrect, and such information has not been otherwise made known to the other party. Fed. R. Civ. P. 26(e).

1  video, it may show such Hispanic inmates being released. But if it does not, the December 7,
2  2011 incident report for the riot will so demonstrate, because it will contain the name, affiliation
3  and housing of all inmates who were present during the riot. Plaintiff contends this demonstrates
4  good cause to extend the discovery deadline.

5  In light of this order, discovery is reopened for the limited purpose of allowing plaintiff
6  time to review the additional discovery, and for the court to conduct an *in camera* review. No
7  new discovery requests may be propounded by any party. The discovery deadline is extended to
8  January 6, 2017.

9  The deadline for filing pretrial motions, except motions to compel discovery, is set for
10  March 8, 2017. In all other respects, the January 6, 2016 scheduling order remains in effect.

11  IV.  Plaintiff's Access to Legal Materials and Related Motion for Sanctions

12  On August 2, 2016, the undersigned ordered defendants to provide the court with the
13  status of plaintiff's access to his legal materials and his ability to attend the law library.
14  Defendants were to provide such status report within fourteen days. Plaintiff filed his reply to
15  defendants' opposition to the discovery motion on August 12, 2016. On September 12, 2016,
16  plaintiff filed a motion for sanctions based on defendants' failure to timely file the status report.
17  In addition to sanctions, plaintiff asks the court to order defendants to provide plaintiff with a
18  copy of the entire record so he can begin preparing his motion for summary judgment, and an
19  incremental thirty day order so that plaintiff can be placed on the priority legal user ("PLU")
20  access list. On October 4, 2016, defendants' counsel filed the status report, and claims that
21  because plaintiff filed his reply, counsel wrongfully believed that plaintiff had received his legal
22  materials.

23  However, on page one of plaintiff's reply, signed August 3, 2016, he confirms that he was
24  transferred to California State Prison, Lancaster ("CSP-LAC") without his legal property, and
25  notes that "responding to defendants' opposition may be difficult, however, will try his best to do
26  so." (ECF No. 103 at 1.)

27  Moreover, whether or not defendants' counsel believed that plaintiff had received his legal
28  materials, defendants were ordered to provide the court a status report on or before August 16,

17

2016. Whether or not plaintiff filed additional documents suggesting he had access to some or all of his legal materials is not relevant to defendants' obligation to comply with the court's order. At a minimum, counsel should have sought relief from the court order on such basis. In addition, had counsel investigated the issue as requested, plaintiff would have been earlier provided his legal materials, and the parties and the court may have been spared from the additional motion for sanctions and further briefing.

Eastern District Local Rule 110 provides for the imposition of any and all sanctions authorized by statute or Rule or within the inherent power of the court if a party fails to comply with the court's Local Rules or any order of the court.

The record reflects that plaintiff's access to his legal materials has been hampered by his multiple transfers between facilities within and among institutions, as well as his mental health issues. (ECF No. 109-1 at 6-7.) However, it appears that plaintiff received the remainder of his property on September 26, 2016. (ECF No. 109-1 at 3.) Thus, his request to be provided with copies of the court record is denied. The Clerk is directed to send plaintiff a copy of the court's docket. Plaintiff's request for PLU status is also denied. Plaintiff is no longer housed in a mental health crisis bed, but has been transferred to CSP-LAC, where he has access to his legal materials and the law library. (ECF No. 109 at 4.)

At this time, the court will not sanction defendants' counsel for the failure to timely file the status report, but warns counsel that a future failure to timely comply with a court order will result in the imposition of sanctions.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 91) is granted in part:

    (a) Within thirty days from the date of this order, defendant Virga shall answer the following interrogatory: "Identify the day, month, and year of the last riot between African-American inmates against any Southern Hispanic or Mexican National inmates that occurred before December 7, 2011, at Facility C of CSP-SAC."

////

    (b) Within thirty from the date of this order, defendants shall arrange for plaintiff to viewing the videotapes of the December 7, 2011 and April 16, 2012 melees or riots, and ensure plaintiff has the ability to take notes and adequate time to review them.

    (c) Within thirty days from the date of this order, defendants shall produce to plaintiff the non-privileged portions of the incident reports concerning the December 7, 2011 and April 16, 2012 melees or riots.  Defendants are permitted to redact the names and identification of individuals who are non-parties.

    (d) Within thirty days from the date of this order, defendants shall submit to the court, for *in camera* review, those portions of the program status reports pertaining to the December 7, 2011 and April 16, 2012 melees or riots, that defendants deem confidential.

    (e) In all other respects, plaintiff's motion to compel (ECF No. 91) and motion for in camera review (ECF No. 104) is denied.

  2. Plaintiff's motion for sanctions (ECF No. 91) is denied;

  3. Plaintiff's motion to extend the discovery deadline (ECF No. 91) is partially granted;

  4. Discovery is reopened until January 6, 2017, for the limited purpose set forth above; No new discovery requests may be propounded by any party;

  5. The deadline for filing pretrial motions, except motions to compel discovery, is set for March 8, 2017.  In all other respects, the January 6, 2016 scheduling order remains in effect;

  6. Plaintiff's motion for sanctions (ECF No. 106) is denied; and

  7. The Clerk is directed to send plaintiff a copy of the court's docket.

Dated:  October 12, 2016

                 /s/ Kendall J. Newman
                 KENDALL J. NEWMAN
                 UNITED STATES MAGISTRATE JUDGE

cole1021.mtc.fb2